UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

DANIEL CURTIS BALLINGER,      )
      )
     Petitioner,    )
v.      )   Nos.   2:09-CR-105-JRG-MCLC-1
      )          2:13-CV-255-JRG
UNITED STATES OF AMERICA,    )
      )
     Respondent.   )
      )

## MEMORANDUM OPINION

Daniel Curtis Ballinger ("Petitioner") is a federal prisoner due to his conviction and sentence in this Court for possessing 50 or more grams of crack cocaine with the intent to distribute.[1] Petitioner has filed a motion pursuant to 28 U.S.C. §2255 to vacate, set aside, or correct his sentence, [Doc. 54], which he has twice amended, [Docs. 60, 63]. Also before the Court is the United States's motion to defer ruling on Petitioner's § 2255 motion pending the Supreme Court's decision next term in *Beckles v. United States*, No. 15-8544, 2016 WL 1029080 (June 27, 2016) [Doc. 64]. For the reasons discussed in this memorandum, both the United States request for stay and Petitioner's original and amended § 2255 motions will be **DENIED**.

## GENERAL BACKGROUND

The indictment in this case charged petitioner with six counts of distributing or possessing with the intent to distribute crack cocaine; with one count of possessing a firearm in furtherance of the drug trafficking offenses; and with one count of being a convicted felon in possession of a firearm.[2] Petitioner retained attorney Johnathan Holcomb to represent him.

---

[1] Judgment, Doc. 40.
[2] Indictment, Doc. 3.

Ultimately, petitioner entered into a plea agreement with the United States,[3] in which he pled guilty to Count Four of the indictment, possession of 50 or more grams of crack cocaine with the intent to distribute.

Petitioner's final Offense Level was 34, and his criminal history category was VI, which generated a guideline range of 262 to 337 months imprisonment.[4] Asserting that petitioner provided substantial assistance to the United States, the government filed a motion for downward departure recommending a five level reduction in his offense level from 34 to 29, which in turn reduced his guideline range to 151 to 188 months imprisonment.[5] The Court granted the motion and sentenced petitioner to 151 months, the bottom of the reduced guideline range.[6]

Petitioner appealed to the Sixth Circuit Court of Appeals. That Court affirmed the judgment and sentence of this Court, finding that plaintiff's guilty plea was valid, and that his sentence was procedurally and substantively reasonable.[7]

In petitioner's first or original motion, [Doc. 54], he makes two claims, both of which accuse attorney Holcomb of providing unconstitutionally ineffective assistance. In his amended motions, [Docs. 60, 63], petitioner argues that he was improperly classified as a career criminal and his sentence accordingly enhanced under the "residual clause" of Section 4B1.1(a) of the United States Sentencing Guidelines ("USSG"). He insists he therefore should be resentenced.

**LEGAL STANDARD**

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or

---

[3] Plea Agreement, Doc. 20.
[4] Presentence Investigation Report (PSR), ¶¶ 18-27.
[5] Doc. 30.
[6] Judgment, Doc. 40.
[7] Or. of Ct. of App., Doc. 52.

otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). See also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503,

506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under §

2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal.

*United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 Petitioner claims he was denied his sixth amendment right to effective

assistance of counsel, it is noted that an attorney is presumed to have provided effective

assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v.

Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or

omissions by his attorney were deficient and that the attorney failed to provide "reasonably

effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by

"prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner

crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the

attorney's acts or omissions], the result of the proceedings would have been different."

*Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's

deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that
> counsel's deficient performance prejudiced the defense. *Strickland v. Washington*,
> 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's ] review of
> counsel's performance is "highly deferential." Id. at 689, 104 S.Ct. 2052. [The
> court must] "judge the reasonableness of counsel's challenged conduct on the facts
> of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690, 104
> S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are
> alleged not to have been the result of reasonable professional judgment." *Id*. To
> establish "prejudice," a "defendant must show that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of the proceeding would
> have been different. A reasonable probability is a probability sufficient to
> undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. "The likelihood
> of a different result must be substantial, not just conceivable." *Harrington v.
> Richter*, 562 U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it
> is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient
> prejudice ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct.
> 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

**PETITIONER'S ORIGINAL MOTION, [DOC. 54]**

      **Claim One:** *Petitioner's trial attorney was ineffective because he failed to object, mitigate and appeal the drug quantity attributed to petitioner.*

      Petitioner complains that this Court merely accepted the recitation in the Presentence Report ("PSR") that he was accountable for 454.55 grams of cocaine base[8] without making an independent determination of credibility, i.e., an independent factual determination that he indeed was responsible for that amount.

      The problem with this claim, which is readily apparent, is that petitioner himself acknowledged to the Court that he was responsible for this amount. First, he so stipulated in paragraph 4 of the plea agreement.[9] Second, during the change of plea colloquy with the Court, petitioner testified under oath that he had reviewed the plea agreement with his attorney;[10] that he was satisfied with attorney Holcomb's representation;[11] that he had read paragraph four of the plea agreement "very carefully";[12] *that the facts set out in paragraph four of the plea agreement were true*;[13] and that he understood that there could be other facts not set out in the plea agreement which the Court could consider when determining what sentence to impose.[14]

      Petitioner testified that he was pleading guilty to Count Four of the indictment because he was in fact guilty.[15] He acknowledged that he confronted a minimum mandatory term of imprisonment of ten years up to a possibility of life, as well as at least five years on supervised

---

[8]   PSR, ¶ 14.

[9]   Doc. 20, ¶ 4.

[10]   Tr., Doc. 50, p. 5.

[11]   *Id*., p. 7.

[12]   *Id*., p. 11.

[13]   *Id*., p. 12.

[14]   *Id*., p. 12.

[15]   *Id*., p. 13.

release up to a possibility of life.[16] Lastly, at petitioner's subsequent sentencing hearing, he acknowledged that he had read the PSR and discussed it with his attorney.[17]

Petitioner is bound by his sworn testimony presented to this Court during his change of plea and sentencing hearings, *Blackledge v. Allison*, 431 U.S. 63 (1997). To allow petitioner to disavow his sworn testimony would countenance perjury and render meaningless plea colloquies, from which it would inexorably follow that guilty pleas themselves would cease to exist as a practical matter.

Since the underlying premise of Petitioner's claim is untrue, it follows that attorney Holcomb did not provide ineffective assistance. Claim One has no merit.

**Claim Two:** *Petitioner's trial attorney was ineffective for failing to "object to, mitigate, and appeal the adequate consideration and application of the factors established under 18 U.S.C. § 3553(a) when determining [petitioner's] sentence, by reason of the disparity in sentence imposed."*

Petitioner's title of this claim is convoluted and confusing, but the language which follows reveals that he is arguing that his sentence was too long because (1) he "does not have a serious criminal background"; (2) it could not be determined "whether or not he would continue such activities upon release;" (3) his attorney failed to argue that petitioner's "mere presence was not sufficient" to prove he was part of a conspiracy; and (4) his sentence was disproportionate when compared to those imposed upon his co-defendants.

Whether petitioner's criminal background is "serious" is a matter of opinion, of course, but the opinion which controls is the one memorialized in the United States Sentencing Guidelines. Petitioner's criminal history generated a specific criminal history category, which in turn generated a sentencing guideline range. In any event, this particular argument is subsumed

---

[16] Id., p. 13.
[17] Doc. 51, p. 2.

by petitioner's amended motions which will be discussed later in this memorandum.

As to petitioner's argument that there was no way to determine if he would continue his criminal activities upon release, it is noted that prior convictions for crimes did not deter him from committing the offense with which he was charged in this Court. Petitioner's own conduct compels the conclusion that his sentence was appropriate in light of the factors of 18 U.S.C. § 3553(a).

Petitioner faults his attorney for failing to argue that his mere presence was not enough to show he was involved in a conspiracy. This argument is irrelevant since he did not plead guilty to a conspiracy.

With respect to his claim that his sentence was disproportionate when compared to the sentences of his co-defendants, it is noted that he had no co-defendants. He was the sole defendant charged in this indictment. Moreover, all which really needs to be said is that the Sixth Circuit Court of Appeals reviewed the record and held that petitioner's sentence was "both procedurally and substantively reasonable."[18] Petitioner may not reargue on collateral attack an issue which was raised and decided on direct appeal, *DuPont v. United States*, 76 F.3d 108 (6th Cir. 1996).

Nothing in this claim remotely suggests attorney Holcomb rendered ineffective assistance. Claim Two in petitioner's original motion has no merit.

**PETITIONER'S AMENDED MOTIONS, [DOCS. 60 AND 63]**

Petitioner argues that he was found to be a career criminal under the "residual clause" of USSG §4B1.2 which since has been held to be unconstitutional by the Sixth Circuit in *United States v. Pawlak*, 822 F.3d. 902, (6th Cir. 2016), and therefore his Offense Level should not have

---

[18] Doc. 52.

been enhanced by three levels.

Having pled guilty to possessing 50 or more grams of cocaine base, petitioner confronted a ten year mandatory minimum prison sentence up to a possibility of life, and a term of at least five years up to a maximum of life on supervised release, 18 U.S.C. §§ 841(a)(1) and (b)(1)(A). His base offense level for this crime was 32. Because he possessed a firearm, his offense level was increased by two levels to 34. The presentence report noted that since petitioner had two prior convictions in Tennessee for aggravated assault which are "crimes of violence" as defined by USSG §4B1.2(a), he was a career offender under USSG §4B1.1(a) and therefore his base offense level was 37 under § 4B1.1(b).[19] Three levels were subtracted for his acceptance of responsibility which resulted in a total offense level of 34.[20]

Petitioner had a total of eight criminal history points which would have yielded a criminal history category of V. But, because he was classified as a career offender, his criminal history category was increased to VI as required by § 4B1.1(b).[21] Based on a total offense level of 34 and a criminal history category of VI, the guideline range was 262 to 327 months.[22]

*Johnson v. United States*, 135 S. Ct. 2551 (2015) held that the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e), is unconstitutionally vague. In *Pawlak, supra*, the Sixth Circuit Court of Appeals held that the *Johnson* ruling effectively invalidated the similar residual clause in the Sentencing Guidelines' definition of "crime of violence" set out in USSG § 4B1.2.

In its response to petitioner's first amended motion, the government argued at length that *Johnson* announced a new procedural, as opposed to substantive, rule of law and therefore should

---

[19] PSR, ¶ 25.

[20] PSR, ¶¶ 25, 26, 27.

[21] PSR, ¶ 38.

[22] PSR, ¶ 60. As noted, the range was reduced to 151 to 188 months after the Court granted the government's motion for a downward departure.

not be applied retroactively on collateral review. However, recently that issue was partly settled by the Sixth Circuit in *In re Patrick*, ___ F.3d ___, 2016 WL 4254929 (6th Cir., Aug. 12, 2016), in which that court held that *Johnson* is substantive and therefore is to be applied retroactively to claims raised in § 2255 motions, at least as far as the Armed Career Criminal Act is concerned. The Sixth Circuit in *Patrick* obviously believes that the *Johnson* rationale also will be applied retroactively to the Sentencing Guidelines, but it stopped short of so explicitly so holding. It only allowed the petitioner Patrick to file a second §2255 motion which makes that claim, directing that the motion was to be held in abeyance until the question is settled by the Supreme Court in *Beckles v. United States* which is now pending before that court.

This court does not have to await a decision in *Beckles*, since petitioner's convictions undeniably were crimes of violence without reference to the residual clause in USSG §4B1.2(a)(2). For example, see *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015), which explains that the courts need not decide what effect *Johnson* has on the Sentencing Guidelines' residual clause where the petitioner's prior convictions qualify as predicate offenses independently of the residual clause [overruled on other grounds by *Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016)].

Section 4B1.1(a) of the Guidelines classifies a defendant as a career offender if (1) he or she was at least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) he or she has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Section 4B1.2(a)(1) defines "crime of violence" as any offense under state or federal law that is punishable by more than one year of imprisonment and "has as an element the use,

attempted use, or threatened use of physical force against the person of another [the use-of-force clause]. Section 4B1.2(a)(2) further defines crime of violence as a "burglary of a dwelling, arson, or extortion, involves the use of explosives" [the enumerated offenses] "or otherwise involves conduct that presents a serious potential risk of physical injury to another" [the residual clause].

*Johnson* only invalidated the residual clause of the Armed Career Criminal Act; the Court made it quite clear that its decision did "not call into question . . . the remainder of the [ACCA's] definition of violent felony," i.e., the use-of-physical-force and enumerated-offense clauses of that Act . *Johnson*, 135 S. Ct. at 2563. Thus, the Guidelines' use-of-force definition in § 4B1.2(a)(1) and the enumerated offenses listed in § 4B1.2(a)(2) likewise remain viable. The question therefore becomes, did petitioner's two convictions for aggravated assault "[have] as an element the use, attempted use, or threatened use of physical force against the person of another?"

To determine whether a particular offense qualifies as a violent felony under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which the court looks "only to the statutory definition, *i.e.*, elements, of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

At the time Petitioner committed his aggravated assault offenses, Tennessee defined the crime as follows:

**39-13-101. Assault.**

(a)  A person commits assault who:
  (1)  Intentionally, knowingly or recklessly causes bodily injury to another;
  (2)  Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
  (3)  Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

**39-13-102. Aggravated assault.**

(a)  A person commits aggravated assault who:
  (1)  Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
    (A)  Causes serious bodily injury to another; or
    (B)  Uses or displays a deadly weapon; or
  (2)  Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
    (A)  Causes serious bodily injury to another; or
    (B)  Uses or displays a deadly weapon.

(b)  A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect the child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.

(c)  A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals.

(d)  A person commits aggravated assault who, with intent to cause physical injury to any public employee or an employee of a transportation system, public or private, whose operation is authorized by title 7, chapter 56, causes physical injury to the employee while the public employee is performing a duty within the scope of the public employee's employment or while the transportation system employee is performing an assigned duty on, or directly related to, the operation of a transit vehicle.

(e)(1) Aggravated assault under subsection (d) is a Class A misdemeanor. Aggravated assault under subdivision (a)(1) or subsection (b) or (c) is a Class C felony. Aggravated assault under subdivision (a)(2) is a Class D felony. However, if an offense under subdivision (a)(1) or (a)(2) or subsection (c) is committed against a law enforcement officer, then the maximum fine shall be fifteen thousand dollars ($15,000).

The statute is divisible because it lists several alternative variants of the offense. *See, e.g.*, *United States v. Cooper*, 739 F.3d 873, 879 (6th Cir. 2014) (recognizing that Tenn. Code Ann. § 39-13-102 "can be offended in a number of ways"). Reference to Petitioner's state-court indictments and judgments make clear that both aggravated assault convictions were for intentionally assaulting another person with use of a deadly weapon, in violation of Tennessee Code Annotated § 39-13-102(a)(1) [Doc. 62-1 (listing offenses as Class C felonies); Doc. 66-1 (charging Petitioner with "intentionally and knowingly caus[ing] [the victims] to reasonably fear imminent bodily injury . . . [while] using and displaying a deadly weapon")]. Because that variant categorically involves an intentional use of violent force, *see* Tenn. Code Ann. § 39-11-106(5) (2003) (defining "deadly weapon" as either "a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or . . . [a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury"); *see also United States v. Arender*, 560 F. App'x 648, 649 (8th Cir. 2014) (finding that a Tennessee aggravated assault conviction based on display of a deadly weapon had "as an element the threatened use of physical force[,] . . . capable of causing pain or injury"), both of Petitioner's convictions remain predicate offenses independent of the now-defunct residual provision.

**CONCLUSION**

For the reasons discussed above, the Court holds that petitioner's sentencing was not in violation of the constitution or laws of the United States and his original and amended motions to vacate, set aside or correct his sentence [Docs. 54, 60, 63] will be **DENIED**. Further, because Petitioner has failed to establish that retroactive application of the *Johnson* decision would affect the propriety of his career offender enhancement, the United States's motion for stay of the petition pending the *Beckles* decision [Doc. 64] will be **DENIED** as well.

12

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. Id. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel,* 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

                                    _____
                                    s/J. RONNIE GREER
                                    UNITED STATES DISTRICT JUDGE